COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-039-CV 

 

 

IN THE MATTER OF D.J.H.                                                                    

 

                                                    

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

D.J.H. appeals the trial
court=s adjudication order declaring that he engaged in the delinquent
conduct of criminal trespass.  In two
points, appellant challenges the legal and factual sufficiency of the evidence
to support the jury=s finding
that he engaged in delinquent conduct. 
We affirm.








The State=s petition alleged that, on or about January 5, 2004, appellant Adid then and there intentionally or knowingly enter a habitation, of
another namely, James Spielmaker, without the consent of the said James
Spielmaker, and [appellant] . . . had notice that the entry was forbidden.@[1]  In his first point, appellant
contends the evidence is legally insufficient to show beyond a reasonable doubt[2]
that he (1) lacked Spielmaker=s effective consent to be in the residence or (2) had notice that
entry was forbidden.  Appellant asserts
that Spielmaker did not tell him to leave and that appellant was simply in the
process of Awrapping
things up@ before
leaving because he was attempting to retrieve his CDs from the living room
coffee table. 








In reviewing the legal
sufficiency of the evidence to support an adjudication of delinquency, we view
all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the delinquent conduct beyond a reasonable doubt.[3]  When performing a legal sufficiency review,
we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact finder.[4]  We must resolve any inconsistencies in the
evidence in favor of the verdict.[5]

ANotice@ under the criminal trespass statute includes oral communication by
the owner or someone with apparent authority to act for the owner.[6]  AConsent@ means
assent in fact, whether express or apparent.[7]  AEffective consent@ includes consent by a person legally authorized to act for the owner.[8]








The evidence in this case
shows as follows:  Spielmaker owned the
home where the alleged criminal trespass occurred, and he resided there with
his girlfriend of six or seven years, Sherrie Curry, and Curry=s two minor children, Lane and Kelsey. 
A well-understood rule in Curry-Spielmaker residence was that when it
became dark and the streetlight came on, the Curry children had to wrap up
their play and all other children had to leave the residence.  Sherrie Curry testified that she had told
appellant Anumerous
times@ about the Astreetlight
rule@ and had also informed him that he was not to come into the home
unless he was invited.  Spielmaker also
testified that, due to prior problems with appellant coming onto his property
uninvited, he had personally informed both appellant and his parents more than
once before January 5 that appellant was not to come into the house uninvited. 

On January 5, 2004, when the
streetlight came on, the Curry children told appellant that he had to leave,
and he left via the front door. 
Spielmaker testified that the children had authority to provide such
notice to their friends and that on January 5 he observed both the children
telling appellant to leave and appellant=s departure.  Spielmaker heard
the front door close when appellant left. 

After appellant left,
Spielmaker and a friend, Dale McCarthy, talked in the kitchen for about twenty
minutes.  Spielmaker and McCarthy then
walked from the kitchen into the living room, where they saw appellant Agoing through the stuff on the coffee table.@  Spielmaker did not know that
appellant had returned to the residence.








Spielmaker testified that he=d had problems with appellant before and Afreaked out@ and asked
him, AWhat are you doing in my house?@  Appellant was startled, had a
look on his face like AI just got
caught,@ and ran out the front door. 
Neither Spielmaker nor the children had given appellant permission to
re-enter the house.  Kelsey testified
that she saw him come back in the front door and begin Agoing through stuff on our coffee table@ just before Spielmaker and McCarthy entered the living room.  She confirmed that appellant Ajumped up in a weird motion@ and looked surprised when Spielmaker saw him.  Kelsey further testified that Spielmaker
yelled at appellant A[f]or coming
into the house without asking or knocking.@ 

Spielmaker sent Lane to
appellant=s home
across the street to find out what was going on.  Lane returned with appellant, and Spielmaker
again asked appellant what he was doing in Spielmaker=s house.  When appellant did not
respond to Spielmaker=s
questioning,[9]
Spielmaker slapped him.  That same
evening, appellant=s mother
filed an assault charge against Spielmaker. Spielmaker did not report the
trespassing incident until after he learned of the assault charge.[10]








Viewed in the light most
favorable to the jury=s verdict,
this evidence is legally sufficient to establish beyond a reasonable doubt that
appellant did not have Spielmaker=s effective consent, whether express or apparent, to re-enter
Spielberg=s residence
after leaving it for the night.[11]  After appellant left the home, neither
Spielmaker or the Curry children invited him back inside.  Instead, Kelsey saw appellant let himself
back in through the front door which was closed when appellant left, and
Spielmaker did not even know appellant was there until he saw appellant in the
living room.

Likewise, the evidence is
legally sufficient to establish that appellant had notice that he lacked
Spielmaker=s effective
consent to re-enter the residence.[12]
Although Spielmaker did not personally tell appellant to leave on January 5,
the Curry children, who had been authorized and were expected to enforce the Astreetlight rule,@ told appellant, in Spielmaker=s presence, that appellant had to go home.  Further, appellant had been informed by
Sherrie Currie of the Astreetlight
rule@ on numerous occasions, and Spielmaker had told both appellant and his
parents more than once that appellant was not to enter the Curry-Spielmaker
home univited.

 








We hold that this evidence is
legally sufficient to establish the lack of effective consent and notice
elements of criminal trespass beyond a reasonable doubt.[13]  Accordingly, we overrule appellant=s first point.








In his second point,
appellant challenges the factual sufficiency of the evidence.  He did not, however, raise this issue in his
motion for new trial.  This court has
held in an en banc opinion that Aas a prerequisite to raising a factual sufficiency challenge on appeal
from a juvenile adjudication hearing, an appellant must first file a motion for
new trial challenging the factual sufficiency of the evidence.@[14]  In reaching this result we
relied on In re M.R., in which the Supreme Court of Texas held that a
motion for new trial is a prerequisite to asserting a factual sufficiency
complaint in an appeal from a delinquency judgment.[15]  Accordingly, the doctrine of stare decisis
demands that we hold that appellant=s factual insufficiency complaint is waived.[16]  Therefore, we overrule appellant=s second point.  

Having overruled both of
appellant=s points, we
affirm the trial court=s
adjudication order.

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL F:    CAYCE,
C.J.; GARDNER and WALKER, JJ.

GARDNER,
J. dissents without opinion to the majority=s holding that the evidence
is legally sufficient to support the jury=s trespass finding.  

 

WALKER,
J. filed a concurring and dissenting opinion.

 

DELIVERED: 
January 12, 2006











 
 
 
 
 
 
 




 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO. 2-05-039-CV

 

IN THE MATTER OF D.J.H.

 

                                              ------------

 

          FROM COUNTY COURT AT LAW NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                   CONCURRING
AND DISSENTING OPINION

 

                                              ------------

 








While I concur with the
majority=s holding that, applying the appropriate standard of review, the
evidence is legally sufficient to support D.J.H.=s delinquency adjudication, I dissent from the majority's holding that
D.J.H. failed to preserve his factual sufficiency challenge.  For the reasons set forth by Justice
Dauphinot in her dissenting opinion in In re J.B.M., which I joined, I
would hold that D.J.H.=s failure to
file a motion for new trial complaining that the evidence was factually
insufficient to support his adjudication did not forfeit his factual
sufficiency complaints on appeal.  157
S.W.3d 823, 830-32 (Tex. App.CFort Worth 2005, no pet.) (Dauphinot, J. dissenting).  I do not agree that In re M.R., 858
S.W.2d 365, 366 (Tex. 1993), cert. denied, 510 U.S. 1078 (1994) requires
that a factual sufficiency claim in a juvenile case must be preserved by a
motion for new trial, because when M.R. was decided we did not have jurisdiction
to review factual sufficiency in criminal cases.  In re J.B.M., 157 S.W.3d at 831.  I would therefore address the merits of his
complaints.  Because the majority refuses
to do so, I respectfully dissent.

 

 

SUE WALKER

JUSTICE

 

DELIVERED:  January 12, 2006











[1]See Tex. Penal Code Ann. '
30.05(a)(1) (Vernon Supp. 2005).





[2]The
beyond a reasonable doubt burden of proof applies in the adjudication phase of
a juvenile case.  In re J.D.P., 85
S.W.3d 420, 422 (Tex. App.CFort Worth 2002, no pet.).





[3]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005); J.D.P.,
85 S.W.3d at 422.





[4]Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000).





[5]Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).





[6]Tex. Penal Code Ann. '
30.05(b)(2)(A) (Vernon Supp. 2005).





[7]Id. '
1.07(a)(11).





[8]Id. '
1.07(a)(19).





[9]Lane
testified that appellant had returned to the home to get some CDs he had left
behind, but that he came back inside uninvited. 
Kelsey confirmed this.  Lane
further testified that appellant said, AJim, wait,@ when
Spielmaker made appellant leave; but both Lane and Kelsey testified that
appellant did not tell Spielmaker that he had come back for his CDs.  Appellant=s mother testified that the
CDs were later left on her doorstep. 





[10]Spielmaker
testified that he had pleaded guilty in municipal court to the assault charge
and paid a $280 fine. 





[11]See Tex. Penal Code Ann. '
1.07(11), (19).





[12]See id '
30.05(b)(2)(A).





[13]See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at
693.





[14]In re
J.B.M., 157 S.W.3d 823, 827-28 (Tex. App.CFort Worth 2005, no pet.) (en
banc).





[15]J.B.M, 157
S.W.3d at 827-28; see In re M.R., 858 S.W.2d 365, 366 (Tex. 1993), cert.
denied, 510 U.S. 1078 (1994).





[16]See
Grapevine Excavation, Inc. v. Maryland Loyds, 35 S.W.3d 1, 5 (Tex.
2000); see also Lubbock County, Texas v. Trammel=s
Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (explaining that,
once the supreme court announces a proposition of law, the decision is
considered binding precedent and it is not for a court of appeals to abrogate
or modify such established precedent).